# FREEMAN, NOOTER & GINSBERG
**ATTORNEYS AT LAW**

LOUIS M. FREEMAN
THOMAS H. NOOTER
LEE A. GINSBERG
———
NADJIA LIMANI
OF COUNSEL
———
CHARLENE RAMOS
OFFICE MANAGER

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038
———
(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM
WWW.FNGLAW.COM

April 20, 2020

<u>BY ECF</u>
Honorable Edward R. Korman
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Abdel Soliman*
17 CR 7 (ERK)

Dear Judge Korman:

On behalf of Abdel Soliman, we seek emergency relief for the extraordinary and compelling reasons stemming from the dangerous health conditions at the Brooklyn House Residential Reentry Center (*hereinafter* "RRC"), a halfway house where Mr. Soliman will be detained beginning May 5, 2020. In short, all we are requesting is that on May 5, 2020, Mr. Soliman be released to home confinement instead of to a halfway house.

Pursuant to 18 U.S.C. §3582 (c)(1)(A) and the guidance provided by the Attorney General in his March 26, 2020 and April 3, 2020 memorandums to the Director of the Bureau of Prisons, we request that Mr. Soliman be re-sentenced to time served with home confinement as a condition of his supervised release for the remainder of his original sentence. His re-entry plan includes a 14-day quarantine at FCI Allenwood Low, which already has been scheduled, living in his wife's home in Astoria, New York, where he can have his own room and be able to self-quarantine, if necessary.

Such a decision would be consistent with the 3553(a) sentencing factors and applicable policy statements issued by the Sentencing Commission. He has served the majority of a sentence that balances the seriousness of his criminal conduct with his acceptance of responsibility. His excellent record while incarcerated, including the completion of the RDAP program earning a 12-month credit on his sentence, reflects an individual who is not a danger to the community. In addition, his age and term of supervised release, make him a low recidivism risk.

**Mr. Soliman's Risk Factors**

Mr. Soliman is fifty-four years old and is currently on convalescent status at FCI Allenwood due to suffering a heart attack last year. Mr. Soliman was given an EKG at the facility and a stress test at an outside hospital. The results of the stress test are pending. Due to his pre-existing heart condition, Mr. Soliman is at risk of developing severe complications or even dying should he contract COVID-19.

> Someone with pre-existing heart disease who becomes ill with COVID-19 may suffer a heart attack or develop congestive heart failure. This rapid worsening of cardiovascular health is likely due to a combination of the severe viral illness and its increased demands on the heart (fever causes rapid heart rate, for example), compounded by low oxygen levels due to pneumonia and increased propensity for blood clot formation…. About 10% of patients with pre-existing cardiovascular disease (CVD) who contract COVID-19 will die, compared with only 1% of patients who are otherwise healthy.

> Dara K. Lee Lewis, M.D., Harvard Health Blog, *How does cardiovascular disease increase the risk of severe illness and death from COVID-19?*, https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401.

**Mr. Soliman's Request to the BOP for Home Confinement**

On April 16, 2020 undersigned counsel wrote via electronic mail to the Warden of FCI Allenwood Low, Regional Director David Paul and BOP counsel for the North East region Les Owen requesting the early release of Mr. Soliman to home confinement pursuant to 18 U.S.C. § 3624, the CARES Act and the above-referenced 3/26/2020 and 4/3/2020 Attorney General memorandums. We have not yet received confirmation of the e-mail by the Bureau of Prisons.

Pursuant to the First Step Act, this Court has the authority to reduce Mr. Soliman's sentence to time served.

> [U]pon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13 Application Note 1 (2018), provides that "extraordinary and compelling reasons" include (A) the medical condition of the defendant, (B) the age of the defendant, (C) his or her family circumstances, and (D) any other extraordinary and compelling reason that the Director of the Bureau of Prisons determines. Many courts have therefore applied the First Step Act in granting compassionate release and reducing sentences for defendants based

2

on the extraordinary and compelling reasons of inmates' medical conditions and the severe health risks posed by the coronavirus in confinement.[1]

Under ordinary circumstances, a defendant is required to wait thirty days from the Warden's receipt of a request for a reduction of sentence based on extraordinary and compelling circumstances before they are permitted to petition the court for such relief.  However, as the Second Circuit stated in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019),

> Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of circumstances.' *McCarthy*, 503 U.S. at 146.  First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue. *Id.* at 148. …The Supreme Court has further stated that exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief. *See McCarthy*, 503 U.S. at 147. Finally, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice. *McCarthy*, 503 U.S. at 146-47.

*Id. at* 118-19.

In *United States v. Perez*, No. 17 Cr. 513, D.E. 98 at 4, Judge Torres found that all three exceptions applied where an inmate at the MDC moved for a reduction of his term of imprisonment under 18 U.S.C. 3582(c)(1)(A) having only three weeks left on his sentence. "Requiring exhaustion, therefore, would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are 'extraordinary and compelling.'  Accordingly, the Court holds that Perez's undisputed fragile health, combined with the high risk of contracting COVID-19 in the MDC, justifies waiver of the exhaustion requirement." *Id.* at 6.  Because Mr. Soliman is due to be released to RRC on May 5, 2020, any additional time restraint on his application for a reduction in his sentence is potentially life-threatening and therefore unduly prejudicial.  Accordingly, the Court is authorized to rule on this application without requiring Mr. Soliman  to exhaust his administrative remedies, i.e. wait until May 16, 2020, thirty days from the date of our letter to the Warden at Allenwood, , to rule on this application.

In *United States v. Smith*, No. 12 Cr. 133, D.E. 197, Judge Keenan ordered an inmate to be released from the MDC immediately finding "extraordinary and compelling reasons" for such release where the inmate was in the "high risk" category of contracting COVID-19 (due to his age, asthma, high cholesterol, blood clots, thyroid condition and suspected multiple myeloma) and was scheduled to be released to a halfway house on April 23, 2020.  "The Court is of the

---

[1] *See, e.g.*, *United States v. Resnick*, No. 14 Cr. 810 (CM) (S.D.N.Y. Apr. 2, 2020), D.E. 461; *United States v. Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), D.E. 98; United States v. Dana, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020), D.E. 108; *United States v. Campagna*, No. 16 Cr. 78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020); *United States v. Marin*, No. 15 Cr. 252 (PKC) (E.D.N.Y. Mar. 30, 2020), D.E. 1325–26; *see also United States v. Edwards*, No. 17 Cr. 3 (NKM), (Apr. 2, 2020), D.E. 134; *United States v. Hernandez*, No. 18 Cr. 20474 (CMA) (S.D. Fla. Apr. 2, 2020), D.E. 42; *United States v. Williams*, No. 04 Cr. 95 (MCR) (N.D. Fla. Apr. 1, 2020), D.E. No. 91; *United States v. Rodriguez*, No. 03 Cr. 271 (AB) (E.D. Pa. Apr. 1, 2020), D.E. 135; *United States v. Muniz*, No. 09 Cr. 199 (KPE) (S.D. Tex. Mar. 30, 2020), D.E. 578; *United States v. Powell*, No. 94 Cr. 316 (ESH) (D.D.C. Mar. 27, 2020), D.E. 97; *United States v. Gonzalez*, No. 18 Cr. 232 (TOR) (E.D. Wa. Mar. 25, 2020), D.E. 834; *United States v. Copeland*, No. 05 Cr. 135 (DCN) (D.S.C. Mar. 24, 2020), D.E. 662 and *United States v. Huneeus*, No. 19 Cr. 10117 (IT), (D. Mass. Mar. 17, 2020), D.E. 642.

opinion that the First Step Act did not empower the Government with the sole authority to decide when and under what conditions exhaustion may be waived, and it agrees with certain of its sister courts that judicial waiver is permissible in light of the extraordinary throat certain inmates face from COVID-19." *Id.* at 10.  Contrary to the position of the Government in most 18 U.S.C. 3582 applications based on COVID-19, including *Smith*,[2] Mr. Soliman's health condition and the proximity to his halfway house release date, warrant waiver of the  exhaustion  requirement.

### COVID-19 Poses Medical Risks to Mr. Soliman as a RRC Resident

As is apparent from the data relating to the number of positive cases in the BOP system, , *see* Federal Defenders' chart *infra*, conditions of confinement create an optimal environment for the transmission of contagious disease. S*ee,* Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910; *see also*, "*An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues*," The New York Times (Mar. 16, 2020), https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings." *See, "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*," March 2, 2020,  https://bit.ly/2W9V6oS.

While the conditions of confinement at a halfway house are not exactly the same as being incarcerated in a federal prison, the dangerous conditions present at RRC constitute a "extraordinary and compelling" reason warranting release.  As of today's date, there are three residents who have tested positive at RRC.[3]  The BOP is not releasing data regarding how many tests have been given at each institution.  Assuming only symptomatic individuals are being assessed for testing, as long as the BOP fails to test all inmates and staff, including symptomatic and asymptomatic individuals, the numbers of inmates and staff that test positive will remain low.  These numbers are dangerously deceiving. One may be asymptomatic and be infected and infect others. Indeed, Dr. Anthony Fauci stated that perhaps as many as fifty percent of those infected are asymptomatic. *See, "As many as half of those with the coronavirus could be asymptomatic, Fauci says*," The New York Times (April 5, 2020), https://www.nytimes.com/2020/04/05/world/coronavirus-live-news-updates.html#link-327dd1e4.

To be clear, residents at RRC are not able to utilize the majority of the safe practices recommended by the CDC to keep individuals safe from COVID-19.  Per the CDC, everyone should 1) clean their hands often, 2) avoid close contact, 3) cover their mouths and noses with a cloth face cover when around others, 4) cover coughs and sneezes and 5) clean and disinfect frequently touched surfaces daily.  *See*, Centers for Disease Control and Prevention, "*How to Protect Yourself and Others*," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited April 8, 2020).

---

[2] Government opposed Smith's motion for release arguing "specifically, that the Court must read the statutory exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) strictly, and thus, it does not have the authority to grant the relief Smith seeks without either a final decision by the BOP on the Petition or the passage of 30 days without one." *Id*. at 6-7

[3] Number of positive cases obtained from www.bop.gov/coronavirus.  RRC holds a maximum of 151 residents. https://www.bop.gov/locations/rrc/index.jsp?contract=15BRRC19D00000249

According to a former resident of RRC, Damian Campagna, there were no precautionary measures taken to ensure the safety of the residents beyond a lock down. "Conditions inside the Brooklyn House left him vulnerable, [Campagna] said, describing how employees there used the same pair of gloves to pat down residents, how the bathrooms were shared by as many as 60 men, and how other shared spaces like the cafeteria and computer stations were not cleaned beyond normal measures. Hand sanitizer, which is alcohol-based, was generally not provided or allowed, he said."  Washington Post, "N.Y. halfway house hit by coronavirus balked at judge's order to release at-risk inmate, his lawyers say," https://www.washingtonpost.com/world/ national-security/ coronavirus-brooklyn-halfway-house-bureau-of-prisons/2020/04/01/45a38912-737b-11ea-87da-77a8136c1a6d_story.html.  Mr. Campagna was released from the Brooklyn House by Judge Schofield on March 27, 2020. "Here, Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC." *United States v. Campagna*, No. 16 Cr. 78 (LGS), D.E. 135 at 6.

As long as these conditions are present and testing is minimal, COVID-19 will continue to spread at RRC, putting each resident and staff member at risk. As of today, there have been eighteen inmate deaths in BOP institutions nationwide.  *Press Releases*, https://www.bop.gov/ resources/press_releases.jsp. As we are all now well aware, this rampant virus does not discriminate. However, being housed in a facility which is densely populated, with inadequate safeguards will raise Mr. Soliman's chances of infection and potential serious medical complications.

While we do not claim that release to home confinement guarantees that Mr. Soliman would be immune from contracting the virus,  he would have a fighting chance to protect himself by self-quarantining in a private residence where he would have access to effective alcohol-based disinfectant; where he would not be housed with innumerable people who have no independent ability to self-quarantine or engage in recommended social distancing; where he could avail himself of masks, gloves and other safeguards, including the opportunity to be tested and access medical care.

## CONCLUSION

Because of the emergent and dangerous COVID-19 outbreak and Mr. Soliman's heart condition, we request that the Court reduce Mr. Soliman's sentence to time served and order home confinement to begin on May 5, 2020, as part of supervised release.   Such a decision would be consistent with the 3553(a) sentencing factors for the reasons stated *supra*.  However, should the Court determine Mr. Soliman is not entitled to an exception of the exhaustion requirements or is otherwise not entitled to compassionate release, we respectfully request that the Court 1) order the Bureau of Prisons to rule on our April 17, 2020 request as soon as possible and 2) recommend to the Bureau of Prisons that Mr. Soliman serve the remainder of his sentence on home confinement pursuant to 18 U.S.C. § 3624 (c)(2) and the 3/26/20 and 4/2/20 memorandums issued by the Attorney General.

Extraordinary and potentially fatal circumstances require swift and uncommon action. Residents at RRC are testing positive for COVID-19, others will get sick, and others may die. Where there is a good faith basis to make a motion for release, as there is here, we have a

professional responsibility to safeguard our clients' health and well- being.  For the above-stated reasons, we urge the Court to grant the relief requested for Abdel Soliman.


Respectfully submitted,

/s/ Louis M. Freeman
Louis M. Freeman


cc: AUSA Mark Bini